## AGREEMENT TO DELIVER DEED IN LIEU OF FORECLOSURE

**AGREEMENT** to deliver a deed-in-lieu of foreclosure made this 11th day of July, 2025 by and between 166 Washington LLC, a Delaware limited liability company registered to do business in the State of New York under the fictitious name Washington 166 LLC (the "Borrower"), and Flerida Santana-Johnas (the "Guarantor") (the Borrower and Guarantor are collectively referred to as the "Obligors") and PS Funding, Inc., a Delaware corporation (the "Lender").

## WITNESSETH:

**WHEREAS**, on or about November 13, 2018, York Capital Management LLC, a New York limited liability company ("*York Capital Management*"), made a loan to Borrower in the original Principal amount of Five Hundred and Seventeen Thousand Five Hundred and 00/100 Dollars ($517,500.00) (the *"Loan"*), as evidenced by that certain Promissory Note, dated November 13, 2018, executed by Borrower and delivered to York Capital Management and, thereafter, assigned to Lender pursuant to an allonge from York Capital Management to Lender (collectively, the "*Note*") and a loan agreement, dated November 13, 2018 by and between York Capital Management and Borrower (the "*Loan Agreement*");

**WHEREAS**, on even date therewith, Borrower, as mortgagor, executed, acknowledged, and delivered to Lender, as mortgagee, that certain Mortgage, Assignment of Leases and Rents, and Security Agreement (the "Mortgage," and together with the Note and all other documents executed in connection therewith, the "Mortgage Documents"), thereby pledging as security for the aforesaid obligation the premises known as 166 Washington Avenue, Albany, NY 12210, COUNTY OF ALBANY, STATE OF NEW YORK, Section: 65.80 Block 4, Lot 46, as more particularly described in Exhibit A attached hereto and incorporated herein by this reference (the "Mortgaged Property"); and

**WHEREAS**, as security for all of the indebtedness and obligations due to York Capital Management, including, but not limited to, the Loan, Borrower executed and delivered to York Capital Management a Mortgage and Security Agreement, dated November 13, 2018 (the "*Security Agreement*"), which was recorded on December 3, 2018, in the Official Records of the Office of the Albany County Clerk under instrument number R2018-26607, and an Assignment of Leases and Rents dated November 13, 2018, , which was thereafter assigned to Lender pursuant to that certain Assignment of Mortgage, dated December 31, 2018 and recorded in the Official Records of the Office of the Albany County Clerk on February 4, 2020 under instrument number R2020-2861, granting to Lender a security interest in the collateral, as defined in the Security Agreement (the "*Collateral*"), and authorized Lender to file a UCC-1 financing statement describing the Collateral in all appropriate offices;

**WHEREAS**, in connection with the Loan, Guarantor executed and delivered a commercial Guaranty, dated November 13, 2018, wherein Guarantor absolutely and unconditionally guaranteed full and punctual payment and satisfaction of all of the indebtedness of the Loan, including, but not limited to, the performance and discharge of all of Borrower's obligations to Lender under the Note, Security Agreement and Loan Agreement, as well as the terms of this Agreement (the "*Guaranty*");

**WHEREAS**, November 13, 2018, Borrower executed and delivered a Building Loan Contract (the "*Building Loan Contract*") to Lender, whereby Lender agreed to loan Borrower $517,500.00 to pay for improvements on the Property.

**WHEREAS**, the Note, Security Agreement, Loan Agreement, Building Loan Contract and Guaranty, together with any and all other documents, instruments, Financing statements and agreements entered into and executed at any time in connection with the Loan or any of the foregoing, as the same may have been amended, restated or otherwise modified from time to time, are hereinafter referred to

collectively as the Loan Documents (**"Loan Documents"**), and all terms capitalized but not otherwise defined herein without definition shall have the meanings ascribed to them in the Loan Documents;

**WHEREAS**, The Loan Documents were modified by a loan modification agreement dated March 3, 2021 (the "**Modification**"). The Modification extended the maturity date of the Loan to June 13, 2021, the remaining terms of the Note and Mortgage were re-affirmed by Obligors;

**WHEREAS**, as set forth above, the Loan Documents were assigned by York Capital Management to Lender by an allonge to the Note and an Assignment of Mortgage dated December 31, 2018;

**WHEREAS**, events of default have occurred under the terms of the Loan Documents as a result of Obligors' failure to make the monthly payment due on June 1, 2021, and failure to pay the Loan in full upon the Loan's maturity on June 13, 2021 (the "**Existing Default**");

**WHEREAS**, due to the continuing Existing Default, on August 13, 2021, Lender, through its counsel Chartwell Law, sent a Notice of Default and Demand in Full to the Obligors (the "**Demand Letters**");

**WHEREAS**, as a result of the continuing Existing Default, Lender commenced an action against the Obligors in the Supreme Court State of New York, County of Albany, captioned "PS Funding, Inc. v. 166 Washington LLC; Flerida Santana-Johnas, et al., Index No. 910124-21", (the "**Foreclosure Action**");

**WHEREAS**, Borrower and Lender executed a certain forbearance agreement (the "Forbearance Agreement") dated as of July 25, 2024, temporarily modifying the payments due under the Mortgage Documents to enable Borrower to cure its defaults under the Mortgage Documents, and suspending prosecution of the foreclosure action while Borrower pays the amounts due under the Forbearance Agreement and cures its defaults under the Mortgage Documents; and

**WHEREAS**, Borrower defaulted on the Forbearance Agreement by failing to remit the payments due on January 13, 2025, whereupon Lender duly declared Borrower to be in default under the Forbearance Agreement and Lender advised Borrower that Lender will proceed with the exercise of all its rights and remedies under the Forbearance Agreement, at law and in equity because of such default; and

**WHEREAS**, Lender has resumed prosecuting the foreclosure action because of such default; and

**WHEREAS**, the principal sum of $968,656.38 with interest thereon from March 29, 2024 plus other fees, costs, and expenses, inclusive of legal fees, advances is due and owing from Borrower to Lender;

**WHEREAS**, the parties hereto are desirous of pursuing an alternative to litigation, agreeing instead that Borrower shall be obligated to convey title to the Mortgaged Property to Lender, its nominee or to any successor or assignee of Lender (such nominee, successor, or assignee being hereafter known as "Designee"), and Lender, or Designee as the case may be, shall release Borrower from its obligation and liabilities under the Mortgage Documents; and

**WHEREAS**, the fair market value of the Mortgaged Property does not exceed the total outstanding unpaid principal of, interest accrued and unpaid on and other outstanding indebtedness due and owing under the Loan Documents;

**NOW, THEREFORE**, it is hereby agreed as follows:

1. Borrower shall grant, transfer, assign, and convey the Mortgaged Property to Lender or Designee, at the time described in this Agreement, free and clear of any right of redemption, homestead, possession, or other right of interest of Borrower or anyone claiming by, through, or under Borrower. The Mortgaged Property includes, without limitation:

(a) good, valid, insurable, and marketable fee simple title to the land (the "Land") legally described in Exhibit A, all buildings and other improvements situation on or within the Land (the "Improvements"); all of Borrower's rights, title, and interest in and to all fixtures, easements, rights, tenements, and appurtenances thereunto belonging or appertaining to the Land and Improvements, and all of Borrower's right, title, and interest in and to any and all streets, alleys, or public ways adjacent to the Land before or after vacation thereof;

(b) (i) All right, title, and interest of Borrower in an to all plans and specifications relating to the Improvements (the Plans and Specifications"), (ii) all unexpired claims, warranties, and guarantees, if any, received in connection with the construction of equipping of the Mortgaged Property (the "Warranties"), (iii) all of Borrower's right, title, and interest in an to real estate sales agreements, service, supply, and maintenance contracts applicable to the Mortgaged Property (the "Assigned Contracts"), and (iv) all licenses, permits, certificates of occupancy, and franchises issues by any federal, state, county, or other governmental authority relating to the use, maintenance, or operation of the Mortgaged Property (the "Licenses and Permits"); and

(c) All of Borrower's right, title, and interest in and to all personal property located on the Mortgage Property that is owned by Borrower (the "Personal Property").

2. Borrower shall deliver, and Lender or Designee shall accept, a Deed-in-Lieu of Foreclosure ("Deed"), as hereinafter set forth and upon the conditions as hereinafter set forth but only upon written demand therefore made by the Lender or Designee which demand shall be sent by personal delivery or by recognized overnight carrier, to be deemed received in the event of personal delivery, on the date of delivery, or if by overnight carrier, on the day after mailing, if applicable, and at such time as the conditions have been seasonally complied with. Satisfactory delivery by Borrower and acceptance by Lender or Designee of all required payments and/or other deliveries, subject to strict compliance with the terms of this Agreement, shall constitute the "Closing" of the deed in lieu transaction.

3. The Deed shall be executed by Borrower to Lender or Designee, inclusive of such non-merger language as the Lender or Designee shall prepare or direct and in the form as hereto annexed as **Exhibit "B,"** which together with the additional documents hereinafter set forth shall be delivered to Lender or Designee to such address as the said recipient shall have designated in its demand, within five days of receipt of demand, to be delivered by the same method as stated in paragraph 1, *infra*.

4. The Deed shall be accompanied by such documents and affidavits signed or executed by Borrower as are required by any title company which will be asked to insure the title being conveyed, and in particular the affidavit of Borrower in form hereto annexed as **Exhibit "C,"** together with all required duly completed and signed transfer documents (and if the property is located within the five boroughs of New York City, a smoke detector affidavit). Transfer taxes and any recording fees shall be paid by Lender or Designee, as the case may be.

5. (a). The foregoing notwithstanding, Lender or Designee shall not be obligated, and need not accept a Deed-in-Lieu of Foreclosure, unless the following documents shall have been delivered in a form solely acceptable to it:

(i) Original tenant leases and all security deposits identified therein, if any; and

(ii) All keys to the subject premises; and

(iii) All other documents or items relating to the subject premises including but not limited to utility bills, insurance policies, the Assigned Contracts, the Warranties, the Plans and Specifications, if any, the Licenses and Permits, if any **and** other items as Lender may reasonably request of Borrower.

    All obligations and promises on the part of Borrower in subsections (i) through (iii), inclusive, shall survive delivery of the Deed-in-Lieu of Foreclosure.

  (b) The quality of title being conveyed at the time the Deed-in-Lieu of Foreclosure is to be delivered shall be acceptable to Lender and/or Designee in its exclusive discretion.

  (c) As of the date of execution of this Agreement, Borrower shall not permit or suffer to exist any encumbrance, charge or lien or allow any easements affecting any portion of the Mortgaged Property to be placed or claimed upon the Mortgaged Property.

  (d) Lender or Designee shall accept the Mortgaged Property and the Personal Property in it as is, where is condition as of the date of this Agreement.

5. In exchange for conveyance of the Deed, Lender or Designee, as the case may be, thereupon releases Borrower (and if applicable, add: and any guarantor) from personal liability upon the obligations in the Mortgage Documents.

6. In exchange for accepting conveyance of the Deed, Borrower shall release the Lender and Designee from any and all claims and liability, in the form annexed hereto as **Exhibit "D."**

7. Borrower acknowledges that the Foreclosure Action is not being discontinued or terminated at this time and that the execution of this agreement is without prejudice to the continuation of the Foreclosure Action.

9. (a) Borrower hereby authorizes Lender and any agent of Lender to market the Mortgaged Property for sale during the term of this Agreement.

  (b) Borrower (i) shall freely permit Lender, its agent(s), or any Designee to inspect the Mortgaged Property and (b) shall cooperate in Lender's or its agent's efforts to market the Mortgaged Property and/or to otherwise identify an entity or individual that shall become the Designee.

10. Borrower will reasonably cooperate, upon Lender's request, with Lender and/or Designee, including, without limitation, any management company designated by Lender to facilitate an orderly transfer of the ownership and management of the Mortgaged Property.

11. Borrower agrees that in the event that Borrower or any affiliate of Borrower receives any rental payment or other payment from any tenant or other occupant or user of the Mortgaged Property following Closing, Borrower will deliver to Lender or Designee, with proper endorsements, such funds not later than two (2) business days following receipt of such funds.

12. Borrower does hereby acknowledge and agree that the transfer to Lender or Designee of title to the Mortgaged Property pursuant to the terms of this Agreement shall not create any obligations on the part of Lender or Designee to third parties that have claims of any kind whatsoever against Borrower with respect to the Mortgage Property, and neither Lender nor Designee assumes or agrees to discharge any liabilities pertaining to the Mortgaged Property.

13. Until the Closing, Borrower shall remain responsible for the management and operation of the Mortgaged Property, including but not limited to making payments for all operating expenses related to the Mortgaged Property.

14. Each party shall pay its own expenses in connection with the Closing. All real property taxes, assessments, water and sewer charges, other utilities operating costs and, if applicable, condominium association dues, shall be apportioned between the parties as of 11:59 on the day immediately preceding acceptance of delivery of the Deed and other deliverables.

15. Borrower represents and warrants to Lender that Borrower is duly organized and legally existing, the executions and delivery by Borrower, and Borrower's performance under, this Agreement are

within Borrower's powers and have been duly authorized by requisite action, and the entity and person executing this Agreement on behalf of Borrower has the authority to do so.

16. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, to Designee, and the respective heirs, administrators, executors, personal representatives, successors, and assigns of the parties hereto and Designee. Notwithstanding anything contained in this Agreement to the contrary, Lender shall be permitted to assign its rights and obligations under this Agreement to any subsequent holder or purchaser of the Note and other Mortgage Documents.

17. All understandings and agreements heretofore had between the parties are merged into this Agreement which alone fully and completely expresses the agreement of the parties. Any amendment hereto shall be in writing signed by the parties. This Agreement is binding upon and shall inure to the benefit of the parties hereto, their heirs, successors and assigns.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the 11th day of July, 2025.

166 Washington LLC, Borrower

By: _____

Name: Flerida Santana-Johnas

Managing Member of 166 Washington LLC

Flerida Santana-Johnas, Guarantor

By _____

Name: Flerida Santana-Johnas

STATE OF NEW YORK       ss.:

COUNTY OF __Albany__

On the __11th__ day of __July__, in the year 20__25__, before me, the undersigned, personally appeared Flerida Santana-Johnas of 166 Washington LLC personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

KYLE E. MCMAHON
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01MC6402021
Qualified in Rensselaer County
Commission Expires December 23, 20__27__

PS Funding, Inc.

By_____

Name: Warren Green, Authorized Signatory

| STATE OF CALIFORNIA | ss.: |
|---|---|
| COUNTY OF LOS ANGELES | |

On the _____ day of _____, in the year 20_____, before me, the undersigned, personally appeared Warren Green, of PSF REO and PS Funding, Inc. personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

_____

Notary Public

## Exhibit A

## Description of Mortgaged Property

## Exhibit B

## Deed

## Exhibit C

## Title Affidavit

## Exhibit D

## Release

## Schedule A – Legal Description

ALL that parcel of land situate in the City of Albany, County of Albany and State of New York, bounded and described as follows:

BEGINNING at a point in the south line of Washington Avenue, said point being 140.52 feet westerly as measured along the south line of Washington Avenue from its intersection with the west line of Dove Street; thence southerly on a line which runs along the east face of the east brick wall of the building standing on the premises herein described and makes an interior angle of 90 degrees 34 minutes 30 seconds with the south line of Washington Avenue a distance of 140 feet to the north line of Spring Street;

THENCE westerly along the north line of Spring Street; making an interior angle of 89 degrees 25 minutes 30 seconds a distance of 58.0 feet, then northerly making an interior angle of 90 degrees 34 minutes 30 seconds a distance of 64.0 feet;

THENCE easterly making an interior angle of 89 degrees 25 minutes 30 seconds distance of 33.0 feet;

THENCE northerly making an interior angle of 270 degrees 34 minutes 30 seconds and running along a line which is along the west face of the west brick wall of the building standing on the premises herein described a distance of 76.0 feet to the south line of Washington Avenue; then easterly making an interior angle of 89 degrees 25 minutes 30 seconds and running along the south line of Washington Avenue a distance of 25.0 feet to the point and place of BEGINNING.

For informational purposes only:
BEING COMMONLY KNOWN as Albany County Tax Block 4, Lot 46
BEING FURTHER COMMONLY KNOWN as 166 Washington Ave., Albany, NY 10009